IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REPLAY, INC. ET AL

    Plaintiffs

            v.

SECRETARY OF THE TREASURY OF
PUERTO RICO, ET AL

    Defendants

**Civil No. 10-1529 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Defendant Secretary of the Treasury, Juan Carlos Puig's ("Defendant") motion to dismiss (Docket # 13), and Plaintiffs' Replay, Inc. et al's ("Plaintiffs") opposition thereto (Docket # 16). After reviewing the filings, and the applicable law, Defendant's motion is **GRANTED in part and DENIED in part.**

**Factual and Procedural Background**

On September 22, 2010, Plaintiffs filed suit against Defendant in his official and individual capacity, among other defendants, seeking damages, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and several state laws, alleging violations to their rights under Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and Article II, Sections 7,[1]

---

[1] The right to life, liberty and the enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied the equal protection of the laws.

**CIVIL NO. 10-1529 (SEC)**  Page 2

8,[2] 9,[3] 10[4] and 19[5] of the Constitution of the Commonwealth of Puerto Rico. Docket # 5. According to the complaint, Defendant cancelled the licenses and seized some video entertainment machines owned by Plaintiffs and located in different establishments throughout Puerto Rico without a search warrant or probable cause. Plaintiffs further aver that Defendant failed to provide adequate pre and post-deprivation remedies, in violation of their constitutional rights.

On December 15, 2010, Defendant moved to dismiss the complaint for failure to state a claim. Docket # 13. He further contends that he is entitled to Eleventh Amendment immunity. Plaintiffs opposed, arguing that the complaint clearly sets forth an entitlement to relief. Moreover, they posit that Defendant is not entitled to Eleventh Amendment immunity in his personal capacity.

---

[2] Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life.

[3] Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law.

[4] The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated. Wire-tapping is prohibited. No warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized. Evidence obtained in violation of this section shall be inadmissible in the courts.

[5] The foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy. The power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.

**CIVIL NO. 10-1529 (SEC)**                                                                                     Page 3

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[6] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

---

[6] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

**CIVIL NO. 10-1529 (SEC)**                                                                 Page 4

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 550 U.S. at 559). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld *Twombly* and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

Therefore, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). In fulfilling this task, courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F. 3d 301, 305-06 (1st Cir. 2008).

**Applicable Law and Analysis**

*Eleventh Amendment immunity*

Defendant posits that the claims against him in his official capacity are barred by Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. Am. XI.[7]

Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 362 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Although the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. See Jusino-Mercado v.

---

[7] The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)).

Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v. Toledo Dávila, 175 F.3d 37, 39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado. 144 F.3d 7,12-13 (1st Cir. 1998); Culebras Enters. Corp. v. Rivera Ríos. 838 F.2d 506, 516 (1st Cir. 1987); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984). The Eleventh Amendment bar also extends to governmental instrumentalities which are an arm or "alter ego" of the State.[8] See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435 (D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974).

      Eleventh Amendment immunity also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Hence, a claim against a state official in his official capacity for monetary relief is, in essence, a claim against the State. As such, all damages claims against Defendant in his official capacity are **DISMISSED with prejudice**.

      Notwithstanding, albeit it is well settled that the Eleventh Amendment bars suits for monetary damages against a state and its officers, it does not preclude claims for prospective equitable relief. See Ex Parte Young, 209 U.S. 123, 155-56 (1908); Nieves-Márquez v.

---

[8] The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or alter ego of the state and thus entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69. In light of the foregoing, we find that the Department of Treasury is an arm or *alter ego* of Puerto Rico, and we need not dwell on this point.

**CIVIL NO. 10-1529 (SEC)**                                                                                                Page 7

Commonwealth of Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003). "The Ex Parte Young doctrine permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477-478 (1st Cir. 2009) (citing Ex Parte Young, 209 U.S. 123). The First Circuit noted, however, that such suits "may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." Id. (citing Edelman v. Jordan, 415 U.S. 651, 664-65 (1974)). Therefore, dismissal of Plaintiffs' claims for declaratory and injunctive relief is **DENIED.** Similarly, the claims against Defendant in his personal capacity are not barred by Eleventh Amendment**.**

*Section 1983 claims*

Defendant argues that Plaintiffs failed to state a Section 1983 claim. Plaintiffs oppose dismissal arguing that they have included averments within their complaint sufficient to survive dismissal at this stage. This Court begins its discussion by addressing the familiar Section 1983 standard.

A claim under Section 1983 is established by demonstrating two essential elements: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145 , 151-152 (2nd Cir. 2006); Burke v. Town of Walpole, 405 F.3d 66, 76 (1st Cir. 2005)(citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)); Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005); Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995) (citing Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987)). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez, 882 F.2d

553, 559 (1st Cir. 1989); Mahoney, 424 F.3d at 89. In turn, this second element of causal connection requires that the plaintiff establish that each defendant's own actions deprived the plaintiff of his/her protected rights. see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58 (1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989); Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006). Furthermore, the conduct alleged to have caused the violation must also be intentional or recklessly indifferent to the plaintiff's federal statutory or constitutional right. Del Villar-Rosario v. P.R. DOJ, No. 06-2089, slip op. at 5 (D.P.R. Mar. 3, 2008); see also Gutierrez Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

The First Circuit has held that "[i]n an action brought under §1983, supervisors are not automatically liable for the misconduct of those under their command." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). However, a supervisor's liability "can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Camilo Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Unless the supervisor directly participated in the deprivation of the plaintiff's constitutional rights, he may only be held liable if: "(1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Id. (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995)).

It is uncontested that the challenged conduct in this case was attributable to a person acting under color of state law insofar as Defendant is the Secretary of the Treasury. Moreover, in the complaint, Plaintiffs aver that during 2009, Defendant cancelled the licenses of some

video machines, and ordered the seizure of the machines object of this case without a search warrant. They further contend that Defendant appeared in the local news calling Plaintiffs "criminals and tax evaders" and stating that the seized machines were illegal per se. Docket # 5, p. 4. Thus Plaintiffs properly pled Defendant's direct participation in the alleged unconstitutional conduct. The parties dispute, however, whether Defendant in fact incurred in conduct that deprived them of their constitutional rights. We will address each of Plaintiffs' claims in turn.

*Fifth Amendment Claims*

The Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law..." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F. 2d 447, 449 (1st Cir. 1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Martínez-Rivera v. Sánchez-Ramos, 498 F. 3d 3, 8 (1st Cir. 2007) (affirming dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers were state actors and not federal actors). Because Plaintiffs' complaint does not allege that Defendant is a federal actor; instead they aver that he is a state officials acting under color of state law (see, Docket # 12 ¶15 ), their claims pursuant to the Fifth Amendment fail.

This Court further notes that the Takings Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, prohibits the government from taking property without just compensation. Garcia-Rubiera v. Fortuño, No. 02-1179, slip op. at 19 (D.P.R. Nov. 15, 2010) (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 175 n. 1 (1985)). Thus the Takings Clause only "proscribes taking without just compensation." Id. (citing Brown v. Legal Found. of Wash., 538 U.S. 216, 235 (2003). The Fifth Amendment imposes two conditions on the exercise of the State's authority to confiscate private

**CIVIL NO. 10-1529 (SEC)**                                                                Page 10

property: (1) the taking must be for a "public use"; and (2) "just compensation" must be paid to the owner. Id. (citing Brown, 538 U.S. at 232-233). In this case, Plaintiffs' property was not taken for public use. Therefore, their claims on this front fail as well. As such, Plaintiffs' claims pursuant to the Fifth Amendment are **DISMISSED with prejudice**.

*Fourteenth Amendment claims*

According to the complaint, Plaintiffs' property was seized without due process of law, specifically, they contend that Defendant did not provide adequate pre-deprivation remedies, such as notification and an opportunity to be heard, or post-deprivation relief.[9] In his motion to dismiss, Defendant argues that he has the authority to confiscate or seize machines whose operation is illegal, thus the seizure of Plaintiffs' machines did not violate their due process rights. He further avers that Plaintiffs filed an administrative complaint before the Department of Treasury challenging the seizure of the machines, therefore they have been afforded adequate post-deprivation remedies.

Under the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In order to establish a procedural due process claim under Section 1983, a plaintiff must first prove that he has a property interest as defined by state law and, second, that Defendants, acting under color of state law, deprived him of that property interest without a constitutionally adequate process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); PFZ Properties, Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991). The First Circuit has held that the basic purport of this constitutional requirement "is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be

---

[9] Plaintiffs also argue that their property was taken without just compensation. As previously stated, however, Plaintiffs' takings claims lack merit insofar as the alleged taking was not for public use.

**CIVIL NO. 10-1529 (SEC)**                                                                                                                Page 11

heard 'at a meaningful time and in a meaningful manner.'" Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990); see also Calderon-Garnier v. Rodriguez, 578 F.3d 33, 38 (1st Cir. 2009) (citing Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976) (internal citations omitted). Therefore, "procedural due process" is simply "a guarantee of fair procedure." Amsden, 904 F.2d at 753 (citing Zinermon v. Burch, 494 U.S. 113 (1990)).

It is well settled that "due process is flexible and calls for such procedural protections as the particular situation demands," thus "[t]here is no mechanical formula by which the adequacy of state procedures can be determined." Amsden, 904 F.2d at 753 (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Accordingly, courts may consider a number of factors when determining the process that is due, such as "the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." Id. In cases such as this one, "the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected." Id.

Here, it is uncontested that Plaintiffs were deprived of their property as a result of the raids ordered by Defendant. In his motion to dismiss, Defendant contends that Plaintiffs' due process claims fail because they were afforded adequate post-deprivation remedies. He does not, however, refute Plaintiffs' claims that their property was seized without prior notification and an opportunity to be heard. Pursuant to the complaint, Defendant failed to provide adequate notice and to offer Plaintiffs a fair chance to present their claim of entitlement. See Gonzalez-Gonzalez v. U.S., 257 F.3d 31, 36 (1st Cir. 2001). Moreover, the fact that Plaintiffs have post deprivation remedies is irrelevant insofar as the deprivation of property was not caused by random and unauthorized conduct by state officials. Chmielinski v. Mass. Office of the Com'r

**CIVIL NO. 10-1529 (SEC)** Page 12

of Prob., 513 F.3d 309, 315 (1st Cir. 2008).[10] As a matter of fact, the seizure of Plaintiffs' property was apparently due to raids ordered by Defendant upon the cancellation of licenses of some video machines pursuant to the Games of Chance Law, Law 22, P.R. Laws Ann tit 15, § 71 et al. Accordingly, we find that Plaintiffs have set forth an entitlement to relief on this front. As such, Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment claims is **DENIED**.

*Fourth Amendment claims*

In the complaint, Plaintiffs argue that the seizure of the machines is illegal because there was no valid search warrant, in violation of their Fourth Amendment right to be free of illegal searches and seizures. In support of his request for dismissal, Defendant posits that the warrantless inspection and seizure of machines such as the ones in this case is authorized by the Puerto Rico Internal Revenue Code of 1994, the Games of Chance Law, and responds to a substantial government interest in regulating the gambling and games of chance industry.

The Fourth Amendment provides that citizens have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The First Circuit recently emphasized that "[a]lthough the Fourth

---

[10] The *Parratt-Hudson* doctrine exists to protect states from needlessly defending the adequacy of state law process when the alleged due process violation results from a deviation from that process. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (holding that when alleged due process violations stem from "random and unauthorized conduct," review is limited solely to the adequacy of the post-deprivation remedies); Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Before invoking the *Parratt-Hudson* doctrine, however, courts must give a hard look at allegations that conduct is "random and unauthorized." See Zinermon v. Burch, 494 U.S. 113, 138 (1990) (finding that conduct could not be said to be "unauthorized" when state had delegated broad discretion to state officials).

Amendment's prohibition on unreasonable searches and seizures is generally applicable to commercial premises as well as private homes, the owner of commercial property in a closely regulated industry has a reduced expectation of privacy in those premises." Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) (citing New York v. Burger, 482 U.S. 691, 702 (1987)). Moreover, insofar as highly regulated industries are subject to strict governmental scrutiny, "the government retains an inherent capacity to conduct searches and inspections in order to ensure compliance with the established laws and regulations." Sepulveda v. Matos, 247 F. Supp. 2d 76, 79-80 (D.P.R. 2003)(citing Burger, 482 U.S. at 700).

The Supreme Court has held that "[w]here the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." Id. (citing Burger, 482 U.S. at 701-702). Three criteria, however, that must be met in order for the inspection to be deemed reasonable. "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provide a constitutionally adequate substitute for a warrant.' … it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." Id. (citing Burger, 482 U.S. at 701-702).

The First Circuit, this district nor the Supreme Court of Puerto Rico have expressly addressed whether the Secretary of the Treasury's has the authority to seize entertainment machines after a warrantless search or inspection of the same. Instead, the Supreme Court of Puerto Rico recognized the Secretary of the Treasury's authority to conduct warrantless searches,

expressly adopting the United States Supreme Court decisions in Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970), United States v. Biswell, 406 U.S. 311 (1972), and G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977). Sepulveda, 247 F. Supp. 2d at 80 (citing The People of Puerto Rico v. Rodriguez, 7 P.R. Offic. Trans. 874, 107 P.R. Dec. 804, 806-807 (1978)). This statutory power vested in the Secretary, however, is not unconditioned or unrestricted. Id. Specifically, if the owner, or his representative, object to the inspection, the agents cannot carry it out by force. Id. Instead, a complaint shall be filed against the owner or his representative for violation of law that confers the right to conduct warrantless searches. Id. In *Sepulveda*, this district addressed a provision similar to Article 5A of the Games of Chance Law, P.R. Laws Ann tit 15, § 84(b)(3), which states that "every person who prohibits or prevents the free inspection of businesses, establishments or places, by internal revenue or law and order agents, with the purpose of conducting investigations related to §§ 82-84 of this title or the regulations promulgated by the Secretary … shall be sanctioned with a fixed penalty of one thousand dollars and an imprisonment term ..." See Sepulveda, 247 F. Supp. at 81. Therein the court upheld the validity of warrantless inspections of commercial premises conducted pursuant to the applicable laws and regulations. Id. at 80. Notwithstanding, the court also noted that this authority did not confer the right to forcefully conduct an inspection when the owner objects to the same. Id. Considering the foregoing, it is reasonable to conclude that the same rule applies when the owner contends that the machines are legal and that their licenses are up to date.

      In this case, Plaintiffs do not question Defendant or agents of the Department of the Treasury's authority to inspect the machines. Instead, they contend that the seizure of the machines was illegal because there was no warrant or probable cause to seize the same since the machines were legal and duly licensed. Although the above cited law grants the Secretary of the Treasury the authority to conduct inspections to ensure compliance with the applicable law, see

id. at 79; P.R. Laws Ann tit 15, § 84(b)(3), the complaint in this case alleges that the machines owned by Plaintiffs had valid licenses and were not illegal. Requiring that owners allow inspection of an establishment, which is minimally intrusive in nature, is not equivalent to authorizing the warrantless seizure of allegedly legal machines. See Tart v. Massachusetts, 949 F.2d 490, 499 (1st Cir. 1991). Considering that at this stage we must make all reasonable inferences in the Plaintiffs' favor and accept as true all well-pleaded facts, we find that Plaintiffs have set forth a plausible claim under the Fourth Amendment. As such, dismissal of said claims is **DENIED**. Defendant may later properly show the illegality of the machines at the summary judgment stage.

Moreover, this Court notes that although Defendant did not expressly argue that he is entitled to absolute immunity, he moves for dismissal on the grounds that he did not violate Plaintiffs' constitutional rights. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11. At this stage, this Court has concluded that Plaintiffs have pled a viable Section 1983 cause of action against Defendant under the Fourth Amendment. Therefore, even if he had properly argued this point, Defendant is not entitled to qualified immunity.

Lastly, the First Circuit has previously stated that the Ninth Amendment, which is essentially the same as Article II, Section 19 of the Commonwealth's Constitution "does not create substantive rights beyond those conferred by governing law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir.1997); see also Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir.1991). It "refers only to unenumerated rights, while claims under §1983 must be premised on specific constitutional guarantees." Bussey v. Phillips, 419 F. Supp.2d 569 (S.D.N.Y.2006); see also Khalid v. Reda, 2003 WL 42145, at p.6 (S.D.N.Y. 2003)(unpublished); Gibson, 926 F.2d at 537 (dismissing Plaintiffs' Ninth Amendment claim on the ground that "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law."); DeLeón v. Little, 981 F. Supp. 728, 734 (D. Conn.1997) (holding that "the [Ninth Amendment] does not guarantee any constitutional right sufficient to support a claim under 42 U.S.C. §1983."). Because Plaintiffs' claim arise under Section 1983, that is, a section that requires a specific constitutional right violation, Plaintiffs' claims under Article II, Section 19 are **DISMISSED with prejudice**.

**CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' damages claims against Defendant in his official capacity are **DISMISSED WITH PREJUDICE**. Their claims against Defendant under the Fifth Amendment to the U.S. Constitution, and Article II, Sections 9 & 19 of the Commonwealth's Constitution are also **DISMISSED WITH PREJUDICE.** Therefore, Plaintiffs' claims for declaratory and injunctive relief, those pursuant to the Fourth Amendment and under Article II, Sections 7, 8 and 10 of the Commonwealth's Constitution remain pending before this Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of April, 2011.

**CIVIL NO. 10-1529 (SEC)** **Page 17**

---

                                    *S/ Salvador E. Casellas*
                                    SALVADOR E. CASELLAS
                                    U.S. Senior District Judge